### A. H. DOBKINS v. SIMON KUYKENDALL ET AL.

#### No. 7156.

1. **Dedication of Homestead.**—Kuykendall having a wife and children owning no land bought an unimproved tract for a home. At once they selected the place thereon for the house, laid a stone foundation, and hauled logs for the purpose of erecting the dwelling. Being unable to complete it they rented land elsewhere; the husband and wife parted; the wife and children returned to the land. *Held,* the testimony sufficiently showed facts sufficient to complete the homestead rights.

2. **Homestead—Husband's Rights.**—That there was ambiguity in the deed under which the homestead was held did not empower the husband to release the homestead in an adjustment with his vendor of disputed boundaries of the tract.

APPEAL from Erath. Tried below before Hon. C. K. Bell. The opinion states the case.

*C. J. Shepard* and *J. B. Goff,* for appellant.—1. The husband is the head of a family, and the wife can not after separation acquire homestead rights in property which the husband had conveyed previous to the separation, he not having previous to said separation acquired homestead rights in the same.

2.   If there was any ambiguity in the deed from Dobkins to Kuykendall, Simon Kuykendall had the right to correct it by reconveying the excess over what he really purchased without the consent of his wife, as in that case he was parting with nothing which belonged to him or his wife.

*Thos. B. King,* for appellees, cited Moreland v. Barnhart, 44 Texas, 275; Barnes v. White, 53 Texas, 628; Welborne v. Downing, 73 Texas, 528; Odum v. Woodward, 74 Texas, 45; Hobby's Land Law, secs. 723, 887, 888.

· GAINES, ASSOCIATE JUSTICE.—The appellant brought this suit to recover a tract of land, which is represented on the following sketch by the triangle, the corners of which are marked by the letters *d e f:*

The plaintiff being the owner of the tract the corners of which are marked on the sketch by the letters *a b d*, in June, 1884, executed and delivered to defendant Simon Kuykendall a deed which described the granted premises as follows: "A tract or parcel of land situated about one-half mile northeast of the town of Dublin, county and State aforesaid, it being a part of the Wm. Thomas original headright survey, beginning at the northwest corner of a survey in the name of Mary E. Keith for the southwest corner of this; thence north 19 east along the east boundary line of a survey made to A. Powers to the southwest boundary line of the E. Meisenhelter survey, the northeast corner of the A. Powers and the northwest corner of this survey; thence along said Meisenhelter line to the northwest corner of a survey in the name of J. T. and M. A. Lauderdale, the northeast corner of this; thence south 19 west to the northeast corner of the said M. E. Keith survey, the southeast corner of this; thence north 71 west along the north boundary line of said Keith survey to the place of beginning; containing 80 acres of land more or less."

In the summer or fall of 1882 the defendant, who was the head of a family (having a wife and children), but who had no other land, selected a plan for a house, laid a stone foundation, and hauled logs for the purpose of erecting a dwelling upon it, intending to make it his home. Not being able to complete his improvements, he rented land elsewhere, intending to make money to build a frame dwelling. Some time in 1883 he sold eighty acres of the land to one Gillette. This is represented on the map by the letters *a b e f*. The plaintiff having set up a claim to the land in controversy upon the ground that he had not sold it to Kuykendall, the latter in April, 1883, reconveyed it to him by a quit claim deed. This deed recited a consideration of $100, but no money was paid or was agreed to be paid. Kuykendall's wife's name was signed to this deed, but it was never acknowledged by her. She denied having signed it. Kuykendall and wife subsequently separated and their children remained with her. In 1887 she moved upon the land with her children.

In 1888 the plaintiff brought this suit against both the husband and the wife. It was in the ordinary form of trespass to try title. The defendants answer that they bought the land intending to make it their homestead, and made preparations to improve it for that purpose; that they had never abandoned it, and had not since the purchase owned any other land. They also pleaded in effect that when defendant Simon Kuykendall bought of plaintiff he intended to buy and plaintiff intended to sell all the lands lying between the Powers, the Meisenhelter, the Keith, and Lauderdale surveys, and prayed that if the deed should not be construed to convey the whole of that tract that it should be reformed in accordance with the real contract of the parties.

In the view we take of the case it is sufficient to say that there was testimony tending strongly to show that the plaintiff intended to sell the land as claimed by the defendants.  On the other hand, the plaintiff's testimony in rebuttal was sufficient to authorize the jury to have found that only eighty acres or a little more was intended to be conveyed.  The court charged the jury in effect that if when the plaintiff conveyed to Kuykendall it was the intention of the grantor to sell and of the grantee to buy only the eighty-two or eighty-three acres of land lying west of the tract in controversy, they should find a verdict for the plaintiff, and also that if their intention was to convey the whole of the tract then the quitclaim deed from Kuykendall to plaintiff reconveyed the land in controversy to the latter, and they should also find a verdict for the plaintiff unless at the date of that deed the premises were the homestead of the defendant.  But the jury were also instructed that if it was the intention of the parties to the first deed to convey the whole tract, and if the defendants had dedicated it as their homestead when Kuykendall made the deed to plaintiff, they should find a verdict for the defendants.  The jury were also correctly instructed as to what acts were necessary to constitute a dedication of land as a homestead when there had been no actual occupancy as a residence.

The jury having found for the defendants and judgment having been rendered accordingly, the plaintiff, having appealed, now complains that "the court erred in making a charge to the jury upon the homestead question."  It is insisted that there was no evidence to warrant a charge upon that issue.  In reference to this assignment it is sufficient to say that the undisputed testimony showed that the defendants had made such preparations upon the land as evinced their intention to make it their home, and that under the rule of decision in this court, by such act, coupled with their intention ultimately to reside upon it, the homestead became complete and continued until that intention was finally abandoned.    Franklin v. Coffee, 18 Texas, 413;  Moreland v. Barnhart, 44 Texas, 275;  Barnes v. White, 53 Texas, 628.

The second assignment of error raises the same question in a different form.

The third is that "the court should have charged the jury that if there was any ambiguity in the description in said deed and that said description needed correction to conform to the true facts, that the defendant Simon Kuykendall had the power to make this correction alone without being joined by his wife, as he in fact did do by the quitclaim deed introduced in evidence."  The court having charged that if the parties to the deed from the plaintiff to Kuykendall intended to convey only the eighty acres lying west of the land in controversy they should find for the plaintiff, no further instruction on that phase of the case was either necessary or proper.  The charge is admirable for its brevity and clearness, and is not subject to any just criticism.

It is also insisted that the court erred in not granting a new trial because of the errors in the charge, and because the evidence showed that there was no intention to convey the land in controversy by the deed from plaintiff to Kuykendall. The evidence upon the question was conflicting, and it was the province of the jury to weigh the testimony and to determine the issue. Even if the verdict should appear to us to be against the weight of the evidence we could not disturb it.

There is no error in the judgment, and it is affirmed.

*Affirmed.*

Delivered May 22, 1891.